# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

**ENTERED**
**08/24/2009**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **Case No. 09-31253-H4-11** |
| **HALLWOOD ENERGY, L.P.,** *et al.*,[1] | § | (presently pending in the Northern District of Texas) |
| Debtor. | § | |
| | § | |
| **PREMIER PIPE, LLC** | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| **J.D. FIELDS & COMPANY, INC.** | § | **Adv. Proceeding No. 09-03202** |
| **HALLWOOD PETROLEUM, LLC** | § | (presently pending in the Southern District of Texas) |
| **AND HALLWOOD ENERGY, L.P.,** | § | |
| | § | |
| Defendants. | § | |
| | § | |
| **J.D. FIELDS & COMPANY, INC.,** | § | |
| | § | |
| Counter-Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| **PREMIER PIPE, LLC,** | § | |
| | § | |
| Counter-Defendant. | § | |
| | § | |
| **AND** | § | |
| | § | |
| **HALLWOOD PETROLEUM, LLC,** | § | |
| | § | |
| Third-Party Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| **NEW TECH ENGINEERING LP,** | § | |
| | § | |
| Third-Party Defendant. | § | |
| | § | |

---

[1] The Debtors include the following entities: (1) Hallwood Energy, L.P.; (2) Hallwood Energy Management, LLC; (3) Hallwood Gathering, L.P.; (4) HG II Management, LLC; (5) Hallwood Petroleum, LLC; and (6) Hallwood SWD, LLC. These Chapter 11 cases were all filed, and are presently pending, in the Northern District of Texas.  They are being jointly administered in that district under Case No. 09-31253-11.

**MEMORANDUM OPINION ON: (1) HALLWOOD ENERGY, L.P. AND HALLWOOD PETROLEUM, LLC'S MOTION TO TRANSFER VENUE; AND (2) JD FIELDS & COMPANY, INC.'S  MOTION TO REMAND AND/OR ABSTAIN**
[Adv. Docket Nos. 6 & 9]

## I. INTRODUCTION

This adversary proceeding arises from a mistaken order of pipe couplings that may have caused damage to a certain well located in Texas (the Well).  On or around December 3, 2007, Hallwood Energy, L.P. and Hallwood Petroleum, LLC (collectively, the Debtor or Hallwood) asked Premier Pipe, LLC (Premier) to solicit price quotes for X-80 grade pipes and matching N80 couplings.  After Premier received bids from several vendors, including a bid from J.D. Fields & Company, Inc. (JDF), all bids were forwarded to New Tech Engineering, L.P. (New Tech).

Thereafter, on or around January 3, 2008, the Debtor instructed Premier to accept JDF's bid. Accordingly, Premier sent JDF a purchase order for X-80 grade pipes and N80 couplings. Unfortunately, JDF mistakenly supplied K-55 couplings instead of N80 couplings.  On or around February 4, 2008, a pressure test occurred, and the Debtor allegedly incurred approximately $1.0 million in damages to the Well. Following the incident, Premier, JDF, and the Debtor each hired independent experts to survey the cause of damage.  While Premier and JDF's experts found that the K-55 couplings were not at fault, the Debtor's expert conversely found that the K-55 couplings were the direct cause of the Well's failure.

Perhaps fearing a lawsuit from the Debtor, Premier preemptively filed suit in the 189th Civil District Court in Harris County, Texas (the Harris County Court).  Premier asserted breach of contract claims against JDF, later amending its petition to include the Debtor.   Subsequently, JDF counterclaimed  against  Premier, and the Debtor brought New Tech in as a third-party defendant.

2

Further, the Debtor counterclaimed against Premier and cross claimed against JDF for mistakenly supplying K-55 couplings instead of N80 couplings.

The lawsuit came before this Court because Premier removed this suit by filing its Notice of Removal on May 29, 2009—eighty-nine days after the Debtor's bankruptcy petition filing on March 1, 2009 in the United States Bankruptcy Court for the Northern District of Texas (the Northern District Bankruptcy Court).[2] On June 22, 2009, the Debtor filed a Motion to Transfer Venue in this Court seeking to transfer venue to the Northern District Bankruptcy Court. The Debtor and Premier argue that because the Northern District Bankruptcy Court is already adjudicating the Debtor's Chapter 11 case, the Northern District Bankruptcy Court is the appropriate forum for adjudicating the lawsuit, as its outcome will affect the entire Chapter 11 case. Conversely, JDF contends that the Harris County Court is the appropriate forum to hear the breach of contract claims because: (1) the doctrine of mandatory abstention requires that this Court abstain from adjudicating the lawsuit; or, alternatively, (2) this Court should permissively abstain pursuant to 28 U.S.C. § 1334(c)(1). This Court agrees with JDF and will remand the lawsuit to the Harris County Court.

## II. FINDINGS OF FACT

1.     On September 26, 2008, Premier filed a suit against JDF in the Harris County Court. This suit was styled *Premier Pipe, LLC v. J.D. Fields & Company, Inc.*, Cause No. 2008-57060 (the

---

[2] This Adversary Proceeding is in this Court because "A notice of removal shall be filed with the clerk for the district and division within which is located that state or federal court where the civil action is pending." Fed. R. Bankr. P. 9027(a); *see also* 28 U.S.C. § 1452(a); *Indus. Clearinghouse v. Mims (In re Coastal Plains, Inc.)*, 326 B.R. 102, 107 (Bankr. N.D. Tex. 2005) (noting that the term "district court" applies to both federal district courts and bankruptcy courts). Thus, although the Debtor's Chapter 11 case is pending in the Northern District Bankruptcy Court, the Lawsuit could only be removed to this Court because the Lawsuit was pending in a state court located in the Southern District of Texas, not the Northern District of Texas.

Lawsuit). The claims asserted were breach of contract claims based on entirely state law.[3] [Adv. Docket No. 6, p. 3, ¶ 5.]

2.      On or about October 28, 2008, JDF filed its Original Counter Claim against Premier in the Lawsuit. [Adv. Docket No. 9-1, p. 5, Def.'s Ex. 5.] This counterclaim is based solely on state law.

3.      On or about November 7, 2008, Premier filed a Second Amended Petition and Request for Disclosure and joined the Debtor (which had not yet filed its Chapter 11 petition) in the Lawsuit.  [Adv. Docket No. 15-2.]  Premier's claims against the Debtor are based only on state law.

4.      On or about December 3, 2008, the Debtor (which had still not yet filed for bankruptcy) filed its Original Counterclaims, Cross Claims, and Third-Party Petition (the Hallwood Litigation) [Adv. Docket No. 15-3.]  The Debtor filed its counterclaims against Premier, its cross claims against JDF, and a third-party petition against New Tech.  All of the Debtor's claims are based solely on state law.

5.      On March 1, 2009, the Debtor filed its Chapter 11 petition in the Northern District Bankruptcy Court.  [Adv. Docket No. 9, p. 5, ¶ 15.]

6.      On May 8, 2009, after a hearing in the Lawsuit, the Honorable Bill Burke, District Judge of the Harris County Court, ordered that Premier respond to JDF's First Request for Production. [Adv. Docket No. 9, p. 5, ¶ 16.]

---

[3] The other parties' later claims are also based solely on state law. In addition, the later claims refer to Premier's breach of contract claims and the circumstances discussed supra Part I.  None of the pleadings assert, nor have the parties ever argued, that this Court has jurisdiction based on a federal question outside of Hallwood's pending bankruptcy case.

7.   The Lawsuit was set for trial on the Harris County Court's docket during the week of December 7, 2009. [Adv. Docket No. 15-4.] The Lawsuit is still set for trial during this week.

8.   On May 29, 2009, Premier filed a Notice of Removal in this Court, thereby removing the Lawsuit to this Court.[4] [Adv. Docket No. 9, p. 5, ¶16.]

9.   On June 22, 2009, the Debtor filed a Motion to Transfer Venue, requesting to transfer the Adversary Proceeding from this Court to the Northern District Bankruptcy Court (the Motion to Transfer Venue). [Adv. Docket No. 6.]

10.   On June 24, 2009, JDF filed a Motion to Remand and/or Abstain (the Motion to Remand). [Adv. Docket No. 9.] JDF requests this Court to abstain from adjudicating the Adversary Proceeding and to remand it to the Harris County Court for adjudication in that forum.

11.   On July 14, 2009, JDF filed its Response in opposition to the Motion to Transfer Venue. [Adv. Docket No. 16.]

12.   On July 14, 2009, Premier filed its Response in support of the Motion to Transfer Venue. [Adv. Docket No. 13.] On this same date, Premier also filed its Objection to the Motion to Remand. [Adv. Docket No. 14.]

13.   On July 14, 2009, the Debtor filed its Response in opposition to the Motion to Remand. [Adv. Docket No. 15.]

---

[4] Hereinafter, any reference to the suit removed to this Court will be referred to as the Adversary Proceeding, whereas any reference to the action while it was pending in the Harris County Court will continue to be referred to as the Lawsuit.

14.     On July 21, 2009, this Court held a hearing on these pending motions. Tony Strehlow, the Chief Financial Officer for the Debtor, testified that the claims asserted by Premier amounted to "simple debt collection" claims. [Tape Recording, 7/21/2009 Trial at 11:48:33.]

15.     At the July 21, 2009 hearing, David Sacks, the attorney for JDF in the Lawsuit who appeared in this Court as an expert witness for JDF, testified that a trial in Harris County Court could take place within four months of the initially-scheduled trial date of December 7, 2009. Thus, in Sacks's opinion, a trial could take place before April 7, 2010. [Tape Recording, 7/21/2009 Trial at 11:44:08.]

16.     At the July 21, 2009 hearing, JDF's counsel stated that Premier has filed a proof of claim in the Debtor's pending Chapter 11 case in the Northern District Bankruptcy Court. [Tape Recording, 7/21/09 Trial at 11:05:40.] None of the other parties dispute this statement.

17.     At the July 21, 2009 hearing, the Debtor's counsel represented that JDF has never filed a proof of claim in Hallwood's pending Chapter 11 case in the Northern District Bankruptcy Court. [Tape Recording, 7/21/09 Trial at 10:55:01.] None of the other parties dispute this statement.

### III. CREDIBILITY OF WITNESSES

At the July 21, 2009 hearing, this Court heard testimony from Tony Strehlow and David Sacks. The Court finds both of these witnesses to be credible.

### IV. CONCLUSIONS OF LAW

**A.      Mandatory abstention is appropriate with respect to the Adversary Proceeding.**

Under 28 U.S.C. § 1334(c)(2), this Court must abstain from adjudicating a claim based on state law if all of the following requirements are met:

(1) The claim has no independent basis for federal jurisdiction, other than § 1334(b); (2) the claim is a non-core proceeding, i.e., it is related to a case under title 11 but does not arise under or in a case under title 11; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court.

*Schuster v. Mims (In re Rupp & Bowman Co.)*, 109 F.3d 237, 239 (5th Cir. 1997) (citing *Gober v. Terra+Corp. ( In re Gober)*, 100 F.3d 1195, 1206 (5th Cir. 1996)); *WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75 F. Supp. 2d 596, 605 (S.D. Tex. 1999); *see also* 28 U.S.C. §§ 1334 (c)(2), 157(b)(1). Here, the facts support the conclusion that all four elements for mandatory abstention are satisfied. Accordingly, this Court must abstain from adjudicating the Adversary Proceeding.

1.    **Other than 28 U.S.C. § 1334(b), the claims in the Adversary Proceeding have no independent basis for federal jurisdiction.**

The first element for mandatory abstention is satisfied because the claims in the Adversary Proceeding between Premier and JDF have no independent basis for federal jurisdiction outside of 28 U.S.C. § 1334(b). Diversity jurisdiction is precluded in the Adversary Proceeding. For diversity jurisdiction to exist under 28 U.S.C. § 1332(a)(1), the plaintiff and defendant must be "[c]itizens of different states," and for purposes of the statute, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. §§ 1332(a)(1)–(c)(1). Here, it is undisputed that Premier and JDF both have their principal places of business in Texas, [Adv. Docket No. 16, p. 10, ¶ 26], so it is impossible for this Court to have diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See, e.g., Volvo Trucks N. Am. Inc. v. Crescent Ford Truck Sales Inc.*, 73 F. App'x 368, 369 (5th Cir. 2008) (finding diversity jurisdiction lacking when both parties were incorporated in Delaware).

Just as there is no diversity jurisdiction, neither is there federal question jurisdiction. There

is simply no federal question and no federal law at issue.   The claims of all parties in the Adversary

Proceeding involve only state law, [Finding of Fact Nos. 1–4], and none of the parties has asserted

a federal question pursuant to 28 U.S.C. § 1331, excluding the Debtor's pending Chapter 11 case.

[Finding of Fact Nos. 1–4.]   Other than 28 U.S.C. § 1334(b), the state law claims in dispute

necessarily lack an independent basis for federal question jurisdiction.   Therefore, the first element

for mandatory abstention is satisfied.

**2.      The claims in the Adversary Proceeding are non-core.**

Premier contends that the Adversary Proceeding is a core proceeding pursuant to 28 U.S.C.

§§ 157(b)(2)(B), (C) and (O).   Subsection 157(b)(2) provides a non-exhaustive list of particular

categories of disputes that constitute core proceedings.   The facts here, however, fail to satisfy any

category of 28 U.S.C. § 157(b).   Therefore, the Adversary Proceeding is non-core.

**a.   The claims in the Adversary Proceeding are non-core pursuant to 28 U.S.C. § 157(b)(2)(B).**

Premier relies upon 28 U.S.C. § 157(b), which provides a comprehensive, yet non-exclusive,

list of core proceedings.   *In re Baudoin*, 981 F.2d 736, 740–41 (5th Cir. 1993).   Premier first relies

upon 28 U.S.C. § 157(b)(2)(B), which states that core proceedings include:

> [the] allowance or disallowance of claims against the estate or exemptions from
> property of the estate, and estimation of claims or interests for the purposes of
> confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or
> estimation of contingent or unliquidated personal injury tort or wrongful death claims
> against the estate for purposes of distribution in a case under title 11.

28 U.S.C. § 157(b)(2)(B).  Premier contends that because Premier asserts claims against the Debtor,

such claims are sufficient to make the Adversary Proceeding a core proceeding.

Generally, determining whether a proceeding is core or non-core requires a determination of

whether the rights to be adjudicated arise from the Bankruptcy Code or some other substantive law.

8

*Harris v. Fid. Nat'l Info. Servs., Inc. (In re Harris)*, No. 08-3014, 2008 WL 924939, at *2 (Bankr. S.D. Tex. Apr. 4, 2008). A "core proceeding" in bankruptcy will "invoke[] a substantive right provided by title 11 . . . [and] is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987). Importantly, "[w]here all of a case's alleged tortious conduct and breaches of contract occurred pre-petition, the case is non-core to the bankruptcy proceeding." *Broyles v. U.S. Gypsum Co.*, 266 B.R. 778, 783 (E.D. Tex. 2001); *see also WRT Creditors Liquidation Trust*, 75 F. Supp. 2d at 609 ("A number of courts have held that state law claims for pre-petition breaches of contract are not core matters.") (citing *Peterson v. 610 W. 142 Owners Corp. (In re 610 W. 142 Owners Corp.)*, 219 B.R. 363, 367 (Bankr. S.D.N.Y. 1998); *In re TVR of Am., Inc.*, 123 B.R. 159, 162 (Bankr. D. Conn. 1991); *Mellon v. Del. & Hudson R.R. (In re Del. & Hudson Ry. Co.)*, 122 B.R. 887, 894 (D. Del.1991)).

In the Lawsuit, the parties asserted state law breach of contract claims long before the Debtor filed its Chapter 11 petition in the Northern District Bankruptcy Court. Indeed, Premier filed its original petition several months before the Debtor filed its bankruptcy petition. [Finding of Fact Nos. 1–4.] Thus, because the breach of contract claims were asserted prepetition, this Court concludes that the state law claims in the Adversary Proceeding are non-core.

Additionally, while the Lawsuit involves claims, counterclaims, cross-claims, and third-party defendants, there is only one claim against the Debtor—Premier's claim. [Finding of Fact Nos. 1–4.]

Premier argues that this Court should not make a decision on whether or not a proceeding is core based on the Lawsuit's grounding in state law. [Adv. Docket No. 14, p. 5, ¶ 23.] This Court readily concedes (even if no express provision of title 11 is in play) that 28 U.S.C. § 157(b)(3) provides that a court should not conclude that a proceeding is a non-core proceeding "*solely* on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3) (emphasis added); *see*

*also In re Southmark Corp.*, 163 F.3d 925, 930, 932 (5th Cir. 1999); *Sabre Techs., L.P. v. TSM Skyline*, No. H-08-1815, 2008 WL 4330897, at *2 (Bankr. S.D. Tex. Sept. 18, 2008). Courts may still consider the state law outcome, however, as one of the factors in determining core and non-core proceedings. *See Wood* 825 F.2d at 97 (holding the proceeding was non-core in "a state contract action that, had there been no bankruptcy, could have proceeded in state court"). Therefore, because the resolution of the Adversary Proceeding is affected solely by state law, the breach of contract claims were asserted prepetition, and only one claim out of multiple claims asserted in the Adversary Proceeding is against the Debtor, the claims in the Adversary Proceeding are non-core pursuant to 28 U.S.C. § 157(b)(2)(B).

**b. The claims in the Adversary Proceeding are non-core pursuant to 28 U.S.C. § 157(b)(2)(C).**

In addition to relying upon 28 U.S.C. § 157(b)(2)(B), Premier also relies upon 28 U.S.C. § 157(b)(2)(C), which states that core proceedings include "counterclaims by the estate against persons filing claims against the estate." 28 U.S.C. § 157(b)(2)(C). Premier argues that because it filed a proof of claim in the Debtor's Chapter 11 case, [Finding of Fact No. 16], the state law causes of action that were removed—particularly the counterclaim filed by the Debtor against Premier—should now be considered core proceedings under 28 U.S.C. § 157(b)(2)(C). *But see Frelin v. Oakwood Homes Corp.*, 292 B.R. 369, 378 (Bankr. E.D. Ark. 2003) (holding that suits filed in state court do not automatically become core proceedings merely because a related proof of claim is filed). JDF, however, in opposing transfer of venue to the Northern District of Texas, argues that because it has not filed a proof of claim in the Debtor's Chapter 11 case, [Finding of Fact No. 17], it has not submitted to the Northern District Bankruptcy Court's subject matter jurisdiction. *See In re Jensen*, 946 F.2d 369, 373 (5th Cir. 1991) (noting a creditor retains the right to trial by jury when it declines

to submit a claim against the estate); *Ctr. Strategic Invs. Holdings Ltd. v. Official Comm. of Unsecured Creditors of SLP, L.L.C. (In re Senior Living Props., LLC)*, 294 B.R. 698, 701–02 (Bankr. N.D. Tex. 2003) (finding 28 U.S.C. § 157(b)(2)(C) applicable when the counterclaim is filed after the proof of claim is filed); *In re Baudoin*, 981 F.2d at 741 (finding 28 U.S.C. § 157(b)(2)(C) applicable if a debtor files for bankruptcy, a bank files a proof of claim, and the debtor asserts a lender liability counterclaim against the bank in response to the proof of claim).   Does 28 U.S.C. § 157(b)(2)(C) then apply when Hallwood asserts a prepetition counterclaim against Premier, Hallwood subsequently files for Chapter 11 bankruptcy months later, and Premier then files a proof of claim?

The court in *Regal Row Fina, Inc. v. Washington Mutual Bank, FA*, No. 3:04-CV-1033-G, 2004 WL 2826817, 2004 U.S. Dist. LEXIS 26704, at *23 (N.D. Tex. Dec. 9, 2004) concluded that a plaintiffs state court petition, even if not initially a core proceeding, could be converted into a core proceeding by the filing of a postpetition proof of claim. *Id.* at *23.   There are, however, several distinguishing facts in *Regal* that are simply not present here.   In *Regal*, Regal sued Washington Mutual, the debtor's largest creditor.[5]  Suing in Texas state court, Regal alleged various state law fraud claims. *Id.* at *4–5.   Three days later, Regal filed a Chapter 11 bankruptcy proceeding, with Washington Mutual subsequently filing a proof of claim. *Id.* at *5, *20.   The court in *Regal* found the state court suit to be a core proceeding because it "directly affects the administration of the estate." *Id.*; *see also Premiere Network Servs v. Sw. Bell Tel. L.P. (In re Premiere Network Servs.)*, No. 04-03687, 2005 Bankr. LEXIS 3245, at *24 (N.D. Tex. Oct 19, 2005) (noting that *Regal* finds a core issue to be one "inextricably intertwined with the bankruptcy proceeding").   Indeed, it was Washington Mutual's collection activities that eventually resulted in the filing of the bankruptcy

---

[5] Washington Mutual held a first priority security interest against all of Regal's real and personal property, including fixtures, equipment, inventory and collateral, which secured loans that Washington Mutual had provided to Regal. *Id.* at *3.

petition

Unlike in *Regal*, where the Regal's state court action was filed only three days before the Chapter 11 petition, the Lawsuit was filed several months before the Debtor's Chapter 11 petition. Additionally, Washington Mutual was Regal's largest creditor and essential to Regal's successful reorganization. *Id.* at *10, *22–23.  Here, no evidence was presented that adjudication of Premier's claim is essential to the reorganization of the Debtor or directly and materially affects the administration of the estate. Indeed, outside of this Adversary Proceeding, Premier has no other claims against the Debtor. Where as Washington Mutual's collection activities were directly related to Regal's bankruptcy and Regal's state court lawsuit, here, the Debtor's successful reorganization is by no means tied to the Adversary Proceeding's outcome—or at least there is no evidence of this nexus in the record.  As such, Premier's claim is not inextricably intertwined with the Debtor's Chapter 11 case; thus, *Regal's* conclusions do not apply to here.

As stated previously, a "core proceeding" in bankruptcy will "invoke[] a substantive right provided by title 11 . . . [and] is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Wood* 825 F.2d at97 (5th Cir. 1987); *Schuster v. Mims (In re Rupp & Bowman Co.)*, 109 F.3d 237, 239 (5th Cir. 1997) (noting that a proceeding is non-core when it relates to a case under the bankruptcy code but does not arise under the code).  Indeed, the Fifth Circuit has stated—citing *N. Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) and *Wood* as examples—that "causes of action which were independent and antecedent to the bankruptcy petition" are not core proceedings.  *See In re Case*, 937 F.2d 1014, 1020 (5th Cir. 1991).  In *Marathon*, the debtor sought contractual damages on a prepetition contract by suing in bankruptcy court. *Marathon*, 458 U.S. at 72.  Additionally, the plaintiffs in *Wood* attempted to recover for an alleged wrongful stock issuance which had occurred both prior to and completely independent of the bankruptcy

proceedings. *Wood*, 825 F.2d at 92–94. Indeed, the Supreme Court noted that the debtor's attempt to augment the estate were private rights, not rights which might be adjudicated in the bankruptcy court, while the Fifth Circuit held that the proceeding in *Wood* was non-core. *Marathon*, 458 U.S. at 72; *Wood*, 825 F.2d at 97.

Here, the facts mirror the situations in both *Marathon* and *Wood*. As in *Wood* and *Marathon*, Premier's cause of action is entirely independent and antecedent to the Debtor's bankruptcy. Premier joined the Debtor in the Lawsuit on or about November 7, 2008. [Finding of Fact No. 3.] The Debtor's prepetition counterclaim, based solely on state law and unrelated to the bankruptcy filing, was filed on December 3, 2008. [Finding of Fact No. 4.] More than five months after Premier filed the Lawsuit, and nearly three months after the Debtor asserted its counterclaim against Premier, the Debtor filed its bankruptcy petition in the Northern District Bankruptcy Court. [Finding of Fact Nos. 1, 4, & 5.] Therefore, because Premier's cause of action was wholly independent of the bankruptcy petition and both Premier's claim and the Debtor's counterclaim were antecedent to the bankruptcy petition, 28 U.S.C. § 157(b)(2)(C) is inapplicable and the claims in the Adversary Proceeding are non-core.

### c. The claims in the Adversary Proceeding are non-core pursuant to 28 U.S.C. § 157(b)(2)(O).

Finally, Premier relies upon 28 U.S.C. § 157(b)(2)(O), which states that core proceedings include "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." 28 U.S.C. §157(b)(2)(O). The Fifth Circuit narrowly construes 28 U.S.C. § 157(b)(2)(O). *In re Baudoin*, 981 F.2d at 742. Indeed, the Fifth Circuit cautions against broad interpretations of the provision and prefers specific examples rather than the catch-all language of § (b)(2)(O). *See Wood*

825 F.2d at 97; *Mirant Corp. v. Southern Co.*, 337 B.R. 107, 116 (N.D. Tex. 2006). The Fifth Circuit applies 28 U.S.C. § 157(b)(2)(O) when the controversy is "inextricably tied to the bankruptcy proceeding because it affects the liquidation of assets." *In re Baudoin*, 981 F.2d at 742 (quoting *In re Branding Iron Motel, Inc.*, 798 F.2d 396, 399 n.3 (10th Cir. 1986) (internal quotation marks omitted).

Here, JDF's claim and Premier's claim are entirely independent of the Debtor's Chapter 11 case. Furthermore, both JDF's claim and Premier's claim are predicated on state law. Nothing in the record indicates that the Adversary Proceeding affects the liquidation of assets. Therefore, because the Fifth Circuit narrowly construes 28 U.S.C. § 157(b)(2)(O), the Adversary Proceeding is not inextricably tied to the Debtor's Chapter 11 case, and does not affect the liquidation of assets; 28 U.S.C. § 157(b)(2)(O) is inapplicable and the Adversary Proceeding is non-core. In sum, because this Court concludes the claims pending in the Adversary Proceeding are non-core, the second element of mandatory abstention is satisfied.

**3.    A cause of action was commenced in state court.**

The third element for mandatory abstention is that an action had commenced in a state forum of appropriate jurisdiction. *Gober* 100 F.3d at 1206. Here, Premier initiated suit against JDF on September 26, 2008 in the Harris County Court, [Finding of Fact No. 1]—approximately five months prior to the Debtor's filing of its Chapter 11 petition on March 1, 2009. [Finding of Fact No. 5.] Long before the Debtor filed its bankruptcy petition, JDF had filed its counterclaim against Premier, Premier had filed its Second Amended Petition and joined the Debtor as a second defendant in the suit, and the Debtor had filed the Hallwood Litigation. [Finding of Fact Nos. 2, 3, & 4.] Indeed, full scale war had broken out in the Harris County Court among the four parties by the time the Debtor filed its Chapter 11 petition. Accordingly, the third element of mandatory abstention is satisfied.

4.      **The action can be timely adjudicated in state court.**

The fourth and final element of the mandatory abstention test is that the pending dispute can be timely adjudicated in state court. Although the party moving for mandatory abstention has the burden to satisfy this requirement, the party need not show that the action can be adjudicated *more* timely in state court than in federal court. Rather, the party need only demonstrate "that the matter can be *timely* adjudicated in state court." *WRT Creditors Liquidation Trust*, 75 F. Supp. 2d at 605 (S.D. Tex. 1999) (emphasis added). The party contending that an action can be timely adjudicated in state court, however, must make more than a mere "naked assertion" in support thereof. *Mugica v. Helena Chem. Co. (In re Mugica)*, 362 B.R. 782, 793 (Bankr. S.D. Tex. 2007).

To determine whether the party moving for mandatory abstention has met its burden on this element, this Court will consider the following factors: (a) the extent to which the suit has already been prosecuted in state court, (b) the expectation of when the state court trial will commence, and (c) evidence in contravention that the state court could adjudicate the case timely. *See Boyles v. U.S. Gypsum  Co.*, 266 B.R. 778, 784 (E.D. Tex. 2001); *Veldekens v. GE HFS Holdings, Inc. (In re Doctors Hosp.)*, 351 B.R. 813, 846 (Bankr. S.D. Tex. 2006). It is favorable for a movant to introduce evidence that the suit has already been prosecuted to some extent in state court and that the state court has issued orders or become familiar with the case. *See Boyles v. U.S. Gypsum Co.*, 266 B.R. at 784 In contrast, a record that indicates a state court suit where no hearings have been held, motions filed, discovery conducted, or orders entered on the docket is unfavorable to the movant. *See Veldekens* 351 B.R. 813 at 846.

a. **The extent to which the suit has already been prosecuted in state court.**

Here, Premier filed an action against JDF in the Harris County Court on September 26, 2008. [Finding of Fact No. 1.]  Approximately one month later, on October 28, 2008, JDF filed a

counterclaim against Premier. [Finding of Fact No. 2.] On November 7, 2008, Premier filed a Second Amended Petition and Request for Disclosure and added the Debtor as a second defendant. [Finding of Fact No. 3.] On December 3, 2008, the Debtor filed the Hallwood Litigation [Finding of Fact No. 4.] On May 8, 2008, the Honorable Bill Burke, District Judge of the Harris County Court, after a hearing, ordered that Premier produce to JDF all documents responsive to its First Request for Production.[6] [Finding of Fact No. 6.] These facts demonstrate that prior to the filing of the Debtor's Chapter 11 petition, the prosecution of the Lawsuit in the Harris County Court had already commenced and was progressing toward trial. Hearings had been held; motions had been filed; and the parties had begun conducting discovery. Further, Judge Burke had issued an order and had become familiar with the Lawsuit.

### b. The expectation of when the state court trial will commence.

The expectation that trial will commence in a timely manner in the Harris County Court is favorable to JDF. *See WRT Creditors Liquidation Trust,* 75 F. Supp. 2d at 606. In *WRT*, the court found it sufficiently timely when the moving party expected that a trial could commence within a year in state court. *See id.* Here, the suit is on the Harris County Court's trial docket for the week of December 7, 2009. [Finding of Fact No. 7.] David Sacks credibly testified that the trial in the Harris County Court, if the Adversary Proceeding is remanded, could take place within four months of the original trial date of December 7, 2009—before April 7, 2010. [Finding of Fact No. 15.]

### c. Evidence in contravention that the state court could timely adjudicate the suit.

---

[6]Judge Burke's ruling is not a violation of the automatic stay because 11 U.S.C. § 362 applies solely to debtors. Here, Judge Burke ordered that Premier respond to JDF's First Request for Production [Finding of Fact No. 6], and both Premier and JDF are non-debtor parties. Discovery between two non-debtor parties is not a violation of the automatic stay. *See In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1147 (5th Cir. 1987) (noting that a stay is only for assisting a debtor and does not stop actions against other non-bankrupt parties).Thus, Judge Burke's holding of a hearing concerning a discovery dispute between non-debtor parties does not constitute a violation of the automatic stay.

16

The Debtor and Premier had the burden to supply "controverting evidence that the state court could not adjudicate the case timely." *Id.* The Debtor and Premier, however, failed to provide any evidence that the Harris County Court could not timely adjudicate the dispute.

Based on the record, this Court concludes that JDF has satisfied its burden and provided more than a mere "naked assertion" that, in a timely manner, the action can be adjudicated. Moreover, JDF provided sufficient evidence that the Lawsuit in Harris County Court has been prosecuted to some measurable extent and that a trial date has been set. At the very latest, trial will be held in April of 2010. Further, the Debtor and Premier have failed to provide evidence to the contrary. Therefore, this Court concludes that the claims among the parties can be timely adjudicated in the Harris County Court. Accordingly, the fourth element of mandatory abstention statute is met.

Because all four elements of the mandatory abstention statute are met, this Court must abstain from adjudicating the Adversary Proceeding. Accordingly, this Court will remand this dispute to the Harris County Court.

**B. Permissive abstention is an alternative ground for remanding the Adversary Proceeding to the Harris County Court.**

Alternatively, in the event mandatory abstention is not applicable, this Court will exercise its judicial discretion and invoke permissive abstention pursuant to 28 U.S.C. § 1334(c)(1). 28 U.S.C. § 1334(c)(1) (providing that a court may abstain "in the interest of comity with State courts or respect for State law"); *see also* Fed. R. Bankr. P. 5011. When ruling on the appropriateness of permissive abstention, courts consider the following factors:

> (1) the effect or lack thereof on the efficient administration of the estate if a court recommends [remand or] abstention; (2) extent to which state law issues predominate over bankruptcy issues; (3) difficult or unsettled nature of applicable law; (4) presence of related proceeding commenced in state court or other nonbankruptcy court; (5) jurisdictional basis, if any, other than § 1334; (6) degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance rather than the form of an

asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of nondebtor parties; (13)  comity; and (14) the possibility of prejudice to other parties in the action.

*Broyles v. U.S. Gypsum Co.*, 266 B.R. 778, 785 (E.D. Tex. 2001) (alterations in original) (citing *Searcy v. Knostman*, 155 B.R. 699, 710 (S.D. Miss. 1993); *Chickaway v. Bank One Dayton, N.A.*, 261 B.R. 646, 651–52 (S.D. Miss. 2001); *Thomas v. R.J. Reynolds Tobacco Co.*, 259 B.R. 571, 578–79 (S.D. Miss. 2001)).

Factor number one applies here and supports permissive abstention because there is no evidence in the record that abstention would have a detrimental effect on the administration of the Debtor's estate.  See *In re Republic Reader's Serv., Inc.*, 81 B.R. 422, 426 (Bankr. S.D. Tex. 1987) ("Where a cause of action for monetary damages based primarily on state law can be litigated in state court without substantial delay and disruption to the orderly administration of the estate, the best forum for resolution of that action is state court.").

Factor two applies here and supports permissive abstention because the claims being litigated among the parties are based solely on state law.  [Finding of Fact No. 1.]

Factor three applies here and supports permissive abstention because Tony Strehlow, the Debtor's own CFO, testified at trial that the claims asserted amount to "simple debt collection." [Finding of Fact No. 14.]  Thus, the claims in the Adversary Proceeding are neither difficult nor unsettled under state law.

Factor four applies here and supports the use of permissive abstention because the Lawsuit has already been commenced in state court.  [Finding of Fact Nos. 1–4.]  Indeed, the Lawsuit was initiated several months prior to the Debtor's bankruptcy filing.

18

Factor five applies here and supports permissive abstention because, as previously discussed, none of the parties are asserting federal question jurisdiction outside of bankruptcy jurisdiction.

Factor six applies here and supports permissive abstention because the Adversary Proceeding is not closely related to the Debtor's Chapter 11 case. *Sabre Techs., L.P. v. TSM Skyline*, No. H-08-1815, 2008 WL 4330897, at *2 (Bankr. S.D. Tex. Sept. 18, 2008) (applying factor six when the claims in the proceeding, which concerned a transaction that created Skyline's largest debt, were very closely related to the main bankruptcy case). The Debtor was both defending against the claims brought against it, and prosecuting its counterclaims, months before it filed its Chapter 11 petition. [Finding of Fact Nos. 1–4.] These circumstances suggest that the Lawsuit was not the precipitating cause of the bankruptcy. Indeed, the Harris County Court had not issued any order adverse to the Debtor by the date of the filing of its Chapter 11. Therefore, the Lawsuit's degree of relatedness to the Debtor's bankruptcy is relatively small.

Factor seven applies here and supports the permissive abstention because the claims being asserted in the Adversary Proceeding are pure state law claims and, therefore, in substance not core proceedings.

Factor eight supports permissive abstention because there are no core bankruptcy issues in the Adversary Proceeding. The feasibility of severing state law claims from core bankruptcy matters is not a factor. Once the Harris County Court issues a judgment, the Northern District Bankruptcy Court may enforce that judgment.

Factor nine does not apply here because no evidence was presented at the July 21 hearing regarding the burden on the Northern District Bankruptcy Court's docket.

Factor ten applies here and supports permissive abstention because Premier, the very party that initiated the Lawsuit in the Harris County Court, removed the Lawsuit to this Court. Premier did so

not immediately, or even soon after the Debtor filed its Chapter 11 petition, but rather only after the Harris County Court issued a ruling requiring Premier to respond to JDF's request for production. [Finding of Fact Nos. 5, 6, & 8.] Premier, apparently unhappy with a ruling on discovery from the very court where Premier had filed the Lawsuit, removed the Lawsuit to this Court—presumably believing that it would somehow be able to avoid, or at least delay, the effect of the Harris County Court's discovery ruling. If this tactic does not smack of forum shopping, then nothing does. After Premier removed the Lawsuit to this Court, the Debtor then filed the Motion to Transfer Venue. [Finding of Fact No. 9.] Premier has affirmatively supported the Motion to Transfer Venue, while vigorously opposing JDF's Motion to Remand. [Finding of Fact No. 12.] Premier, having initiated the Lawsuit in the Harris County Court and then having removed the Lawsuit to this Court, is now seeking to have this dispute tried in yet a third forum: the Northern District Bankruptcy Court. Once again, this is blatant forum shopping. And, aside from Premier's unsavory tactics, the Debtor has also been forum shopping. Long before the Debtor filed its Chapter 11 petition, the Debtor had become very active in the Harris County Court, as it had filed the Hallwood Litigation. [Finding of Fact No. 4.] Thus, it was only after the Debtor filed its Chapter 11 petition—and only after Premier removed the Lawsuit—that the Debtor filed the Motion to Transfer Venue. Prior to the filing of its Chapter 11 petition, the Debtor exhibited no signs of unwillingness to defend against and prosecute claims in the Harris County Court. The Debtor's filing of its Chapter 11 petition three months after initiating the Hallwood Litigation does not justify changing the forum from the Harris County Court to Bankruptcy Court. The Debtor's forum shopping strategy will not work.

Factor eleven applies here and supports permissive abstention because this Court agrees with JDF's assertion that it has a constitutional right to a jury trial. [Adv. Docket No. 9, p. 14; Adv.

Docket No. 15, p. 10, ¶ 29.][7] *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58–59 (1989) (stating that where a party has not filed a claim against the bankruptcy estate, the action is not vital to restructuring the relationship between debtor and creditor, leaving the party who has not filed a claim against the bankruptcy estate the right to a jury trial).

Factor twelve applies here and supports permissive abstention because although the Debtor was a party in the Lawsuit already commenced in the Harris County Court, the other three parties involved in this suit are all non-debtors. Indeed, only one of the non-debtor parties—Premier—has filed a proof of claim in the Northern District Bankruptcy Court. *Walker v. Wheeler (In re Wheeler)*, No. 04-6004, 2004 Bankr. LEXIS 1030, at *13 (Bankr. N.D. Tex. July 23, 2004) ("[T]he presence of nondebtor parties in this proceeding weighs in favor of granting remand and allowing the parties to litigate the dispute in Texas state court with the applicable Texas venue provisions.").

Factor thirteen applies here and supports permissive abstention because an action has already been commenced in state court, [Finding of Fact No. 9], and in the interest of comity, should remain in state court. *See Broyles v. U.S. Gypsum Co.*, 266 B.R. 778, 786 (E.D. Tex. 2001) (noting interests of comity apply when there are a large and broad variety of defendants, even when the state law issues are routine).

Factor fourteen does not apply here because no conclusive evidence was presented that a possibility of prejudice against the non-debtor parties would occur if this Court denied the Motion to Remand and transferred venue of the Adversary Proceeding to the Northern District Bankruptcy Court.

In sum, twelve of the fourteen factors weigh in favor of abstention, and several of these factors

---

[7] In the Motion to Remand, JDF represents that it requested a jury trial while the Lawsuit was pending in the Harris County Court. The Debtor, in the Debtors's Response to the Motion to Remand, acknowledges that JDF has invoked its right to a jury trial.

are compelling, particularly that all of the claims are based solely on state law, that Premier and the Debtor are engaged in blatant forum shopping, and that JDF is entitled to a jury trial. For all of these reasons, this Court will permissively abstain from adjudicating the Adversary Proceeding. Accordingly, this Court will remand this dispute to the Harris County Court.

## V. CONCLUSION

For the reasons set forth above, this Court concludes that mandatory abstention applies pursuant to 28 U.S.C. § 1334(c)(2), and that this Court must abstain from adjudicating the Adversary Proceeding.  In the alternative, even if this Court is incorrect in its conclusion that mandatory abstention applies, this Court concludes that it should exercise its discretion and, pursuant to the permissive abstention statute of 28 U.S.C. § 1334(c)(1), refrain from trying the Adversary Proceeding. Because this Court concludes that it should abstain, this Court will remand the Adversary Proceeding to the Harris County Court.

A separate order consistent with this Memorandum Opinion will be entered on the docket simultaneously with the entry of this Opinion.

Signed on this 24th day of August, 2009.

Jeff Bohm
United States Bankruptcy Judge